IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DAVID MERRITT, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Action No. 13-1734-GMS |
| ) | |
| DAVID PIERCE, Warden, and ) | |
| ATTORNEY GENERAL OF ) | |
| THE STATE OF DELAWARE, ) | |
| ) | |
| Respondents. ) | |

David Merritt. *Pro se* petitioner.

Gregory E. Smith, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for respondents.

**MEMORANDUM OPINION**

_March 6_, 2017
Wilmington, Delaware



Sleet, District Judge

Pending before the court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 and an amended petition (hereinafter referred to as "petition") filed by petitioner David Merritt ("Wynn"). (D.I. 2; D.I. 7; D.I. 8; D.I. 25) The State filed an answer in opposition. (D.I. 15) For the reasons discussed, the court will deny the petition.

## I. BACKGROUND

In 2010, a Delaware Superior Court jury convicted Merritt on eight counts of first degree rape, one count of continuous sexual abuse of a child, and two counts of first degree unlawful sexual contact. *See Merritt v. State*, 12 A.3d 1154 (Table), 2011 WL 285097, at *1-2 (Del. Jan. 27, 2011). The convictions stemmed from Merritt's sexual abuse of his older daughter. He was sentenced to a total of 127 years of imprisonment. The Delaware Supreme Court affirmed Merritt's convictions on direct appeal. *Id.* at *4.

Merritt filed a Rule 61 motion in the Delaware Superior Court, which the Superior Court denied. *See State v. Merritt*, 2012 WL 5944433 (Del. Super. Comm'r Nov. 20, 2012). The Delaware Supreme Court affirmed that decision. *See Merritt v. State*, 77 A.3d 272 (Table), 2013 WL 5432824 (Del. Sept. 24, 2013).

## II. GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the

United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

### B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>   (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *See Bell*, 543 U.S. at 451 n.3; *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

2

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *See Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *see Teague v. Lane,* 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *See Lines,* 208 F.3d at 160; *Coleman v. Thompson,* 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman,* 501 U.S. at 750; *Harris v. Reed,* 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *See Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional
3

violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998). In order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537-38 (2005); *see Sweger v. Chesney*, 294 F.3d 506, 522-24 (3d Cir. 2002).

### C. Standard of Review

When a state's highest court has adjudicated a federal habeas claim on the merits,[1] the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). This deferential standard of § 2254(d) applies even when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied. *See Harrington v. Richter*, 562 U.S. 86, 98-101 (2011). As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

---

[1] A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009).

4

Finally, a federal court must presume that the state court's determinations of factual issues are correct. *See* 28 U.S.C. § 2254(e)(1); *Appel*, 250 F.3d at 210. This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003)(stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## III. DISCUSSION

Merritt's timely filed habeas petition alleges three grounds for relief: insufficient evidence, ineffective assistance of trial counsel, and the unconstitutional denial of counsel during his Rule 61 proceeding in the Delaware state courts. (D.I. 2; D.I. 7; D.I. 8) The State filed an answer to the petition, arguing that claim one should be denied as procedurally barred, claim two should be denied as meritless, and claim three should be denied for failing to assert an issue cognizable on federal habeas review. (D.I. 15 at 4) Thereafter, Merritt filed two replies and an amended reply to the State's answer (D.I. 20; D.I. 23; D.I. 25), as well as two supplements to the petition (D.I. 31; D.I. 34), essentially clarifying and expanding his three original grounds for relief.

### A. Claim One: Insufficient Evidence

In claim one, Merritt contends that there was insufficient evidence of penetration to support his convictions for first degree rape. Merritt did not raise this argument on direct appeal and, although he asserted the argument in his Rule 61 motion, he did not present it to the Delaware Supreme Court on post-conviction appeal. Any attempt to raise the argument in a new

Rule 61 motion would be denied as time-barred under Rule 61(i)(1). Therefore, as the State asserts, claim one is procedurally defaulted, which means that the court cannot review its' merits unless Merritt demonstrates cause and prejudice, or that a miscarriage of justice will result from the absence of review.[1]

In his reply to the State's answer, Merritt attempts to establish cause for his default of claim one on defense counsel's failure to raise a contemporaneous objection during trial, which he contends resulted in not preserving the instant sufficiency of the evidence issue for direct appeal. (D.I. 20 at 3) An attorney's error can constitute cause for a procedural default, but only if the petitioner first presented that ineffective assistance of counsel claim to the state courts as an independent claim and it was determined that the attorney's error amounted to constitutionally ineffective assistance. *See Murray*, 477 U.S. at 488-89. As discussed later in this opinion, the court concludes that Merritt's complaint about defense counsel's alleged failure to raise a contemporaneous objection that there was insufficient evidence of penetration is meritless. *See infra* at 8-14. In addition, counsel's Rule 61 affidavit explains that the decision to not raise the issue of the sufficiency of the evidence on direct appeal was due to counsel's determination that the issue lacked merit, and not due to trial counsel's failure to raise a contemporaneous objection to the sufficiency of the evidence during the trial. (D.I. 47, Counsels' Answer to Defendant's

---

[1]Merritt argues the court should review claim one's merits because the Superior Court erroneously determined the claim was procedurally barred. Since, on habeas review, the court must defer to the Delaware courts' application and interpretation of state law, and since the Delaware state courts clearly relied on the independent and adequate Delaware Superior Court Criminal Rule 61 when it denied claim one, the court accepts the Delaware state courts' conclusion that claim one is procedurally defaulted. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). Therefore, the court's inquiry is limited to determining if Merritt's default should be excused.

6

Motion for Post-Conviction Relief, at ¶¶ 25, 26) Therefore, Merritt has failed to establish defense counsel's performance as cause for his default of claim one.

Merritt also contends that, under *Martinez v. Ryan*, 566 U.S. 1, 8-9 (2012), the absence of counsel in his Rule 61 proceedings provides cause for his default. This argument is unavailing. In *Martinez,* the Supreme Court held for the first time that inadequate assistance or the absence of counsel during an initial-review state collateral proceeding may establish cause for a petitioner's procedural default of a claim of ineffective assistance of trial counsel. *Id.* at 12, 16-17. In order to obtain relief under *Martinez*, a petitioner must demonstrate that the state did not appoint counsel in the initial-review collateral proceeding (or that counsel was ineffective during that proceeding), that the underlying ineffective assistance of trial counsel claim is substantial, and that the petitioner was prejudiced. *Id.* at 14-17. A "substantial" ineffective assistance of trial counsel claim is one that has "some" merit" which, given the *Martinez* Court's citation to *Miller-El v. Cockrell*, 537 U.S. 322 (2003), appears to be governed by the standards applicable to certificates of appealability. *See Martinez*, 566 U.S. at 13. However, the *Martinez* Court explicitly limited its rule, stating that the "holding in this case does not concern errors in other kinds of proceedings, **including appeals from initial-review collateral proceedings**." *Id.* at 16 (emphasis added) The Supreme Court explained that, "[w]hile counsel's errors in these [other kinds of] proceedings preclude any further review of the prisoner's claim, the claim will have been addressed by one court, whether it be the trial court, the appellate court on direct review, or the trial court in an initial-review collateral proceeding." *Id.* at 11.

In this case, Merritt presented claim one in his "initial-review collateral proceeding," but then failed to present the claim to the Delaware Supreme Court on post-conviction appeal.

7

Therefore, it appears that the *Martinez* rule is inapplicable, and the absence of counsel during Merritt's Rule 61 proceeding does not provide cause to excuse the default of claim one.

Nevertheless, even if the *Martinez* rule should be liberally interpreted as applying to the absence of an attorney in a post-conviction appeal when, as here, the ineffective assistance of counsel claim was actually presented in the initial-collateral review proceeding, the court does not excuse Merritt's default. As explained later in this opinion, defense counsel's failure to object to the sufficiency of the evidence for the penetration element of first degree rape did not amount to constitutionally ineffective assistance. *See infra* at 8-14. Therefore, the underlying ineffective assistance of counsel claim is not substantial and does not constitute cause under *Martinez*.

In the absence of cause, the court will not address the issue of prejudice. Additionally, the miscarriage of justice exception to the procedural default doctrine cannot excuse Merritt's default, because Merritt has not provided new reliable evidence of his actual innocence. Accordingly, the court will deny claim one as procedurally barred.

### B. Claim Two: Ineffective Assistance of Counsel

In claim two, Merritt contends that defense counsel provided ineffective assistance by not contemporaneously objecting to the State's improper questioning of Merritt's daughter after she used her hands and tissue box to visually demonstrate the sexual abuse and by not objecting that there was insufficient evidence to establish the penetration element for first degree rape. Merritt presented this claim to the Delaware Supreme Court on post-conviction appeal, which denied it as meritless. Therefore, he will only be entitled to habeas relief if the Delaware Supreme Court's decision was either contrary to, or an unreasonable application of, clearly established federal law.

The clearly established law governing the instant ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 694.

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-260 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

Turning to the first prong of the § 2254(d)(1) inquiry, the court notes that the Delaware Supreme Court cited and applied the *Strickland* standard in affirming the Superior Court's decision. Therefore, the Delaware Supreme Court's decision was not contrary clearly established federal law. *See Williams,* 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rale from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

9

The court's inquiry under § 2254(d)(1) is not over, because it must also determine if the Delaware Supreme Court's denial of claim one as meritless involved a reasonable application of the *Strickland* standard. When performing this inquiry, the court must review the Delaware Supreme Court's decision with respect to petitioner's ineffective assistance of counsel claims through a "doubly deferential" lens. *See Harrington*, 562 U.S. at 105. In other words, "the question is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

The Delaware Supreme Court affirmed the Superior Court's denial of claim two after reviewing the record and concluding that there was "no evidence that Merritt's trial counsel's representation was deficient or that any alleged error on the part of trial counsel affected the outcome of Merritt's trial or direct appeal." *Merritt*, 2013 WL 5432824, at *1. For the following reasons, the court concludes this decision involved a reasonable determination of the facts and was based on a reasonable application of *Strickland*.

### 1. **Failure to object to State's improper questions**

During the State's direct examination of Merritt's daughter regarding the location of Merritt's penis in relation to her vagina, the daughter first used her hands and tissue box to demonstrate to the jury how Merritt's penis would rub between her labia lips. Because this visual demonstration was not something the court reporter could transcribe, the State recounted for the record what the daughter had just done before the jury. Defense counsel objected to the State's characterization of the demonstration. Following a sidebar during which the judge overruled the objection, the daughter briefly continued to use her hands to demonstrate the sexual activity to the jury.

Here, Merritt contends that the State misrepresented the daughter's demonstration, and that defense counsel was ineffective for failing to object to the continuing demonstration and the State's questions. This allegation does not warrant relief. The record shows that the State did not misrepresent what the daughter demonstrated on the witness stand and that it did not ask improper questions. For instance, when the daughter testified that Merritt's penis "didn't actually go in my private part, but it rubbed against my private part," the State summarized by stating, "when you say it didn't actually go in, do you mean it didn't go in your vagina?" (D.I. 17, Feb. 24, 2010 Trial Transcript at 84-85) The daughter then used her fingers to demonstrate, stating "it's not going in my hole, it's just going up." (D.I. 17, Feb. 24, 2010 Trial Transcript at 91) The State re-stated, "Inside the lips but not in the vagina?" *Id.* Defense counsel objected, the trial court overruled the objection, and the daughter explained that "It rubbed against." *Id.* In addition, the record shows that defense counsel did raise a contemporaneous objection to the State's description of the daughter's demonstration. In short, the instant contention is factually baseless, and the court therefore concludes that the Delaware Supreme Court's denial of the argument did not constitute an unreasonable application of *Strickland*.

### 2. Failure to object to insufficiency of evidence of penetration

Merritt's contention that defense counsel was ineffective for not contemporaneously objecting that the evidence of penetration was insufficient is also unavailing. To begin, defense counsel moved for judgment of acquittal and argued that there was insufficient evidence of first degree rape. (D.I. 17, Mar. 1, 2010 Trial Transcript at 4) The fact that trial court denied the motion for acquittal does not negate defense counsel's act of challenging the sufficiency of the evidence, and there is nothing in the record to indicate that the trial court's decision would have

11

been different if defense counsel's objection had been made contemporaneously with the testimony produced at trial. (D.I. 17, Mar. 1, 2010 Trial Transcript at 5)

Second, the record demonstrates that there was sufficient evidence to support Merritt's convictions. The United States Supreme Court precedent governing insufficient evidence claims is *Jackson v. Virginia*, 443 U.S. 307 (1979). Pursuant to *Jackson*, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16. Additionally, "a federal habeas court faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* at 326. It is not necessary that the evidence exclude every reasonable hypothesis except that of guilt. *Id.*

In Delaware, first degree rape is defined, in part, as engaging in "sexual intercourse" without the consent of the victim. *See* 11 Del. Code Ann. § 773. "Sexual intercourse" is defined as "[a]ny act of physical union of the genitalia or anus of one person with the mouth, anus, or genitalia of another person. It occurs upon any penetration, however slight. Ejaculation is not required." 11 Del. Code Ann. § 761(g). The legal definition of sexual penetration includes the unlawful placement of one's penis, or any part of one's body, inside the vagina of another person, or the unlawful placement of the genitalia inside the mouth of another person. *See* 11 Del. Code Ann. §§ 761(i)(1)(2) and (d). Significantly, a victim's testimony regarding sexual contact or penetration is sufficient to support a jury's guilty verdict of rape. *See Taylor v. State*, 982 A.2d 279, 285 (Del. 2008); *Styler v. State*, 417 A.2d 948, 950 (Del. 1980).

Here, evidence was presented during the trial showing that Merritt rubbed his penis on the labia lips of his daughter's vagina on some occasions, and on other occasions, he put his tongue inside the labia lips of his daughter's vagina. (D.I. 17, Feb. 24, 2010 Trial Transcript at 95, 106-107, 116-117, 119) For instance, Merritt's daughter testified:

> Q: Okay. And just so we're clear, I'm not putting words in your mouth, you're telling this jury that he would rub his penis inside your lips but not in the hole?
>
> A: Yes.
>
> *    *    *    *    *    *    *
>
> Q: Did it happen at least nine different times?
>
> A: Yes.
>
> Q: And during those nine different times, at least, would he either put his tongue between your lips or his penis between the lips of your private part?
>
> A: Yes.

(D.I. 17, Feb. 24, 2010 Trial Transcript at 95, 119) His daughter also testified that, after Merritt moved to a different apartment, "he started using his mouth," (D.I. 17, Feb. 24, 2010 Trial Transcript at 112), and "he would eat me out . . . this is his tongue and he'd just lick in between my lips [referring to her "private part"]." (D.I. 17, Feb. 24, 2010 Trial Transcript at 116-17) Finally, inculpatory text messages Merritt sent to his ex-wife and inculpatory Family Court filings were entered as evidence. For instance, Merritt told his ex-wife in a text message that he was enrolling in a sexual abuse class. (D.I. 17, Feb. 24, 2010 Trial Transcript at 5) In a letter he filed in Family Court, Merritt wrote that he would not challenge the loss of custody of his daughters "while I seek professional help and attention needed to help me understand and resolve the personal issues that would bring me to such an irresponsible and selfish act against my daughter and family." (D.I. 17, Feb 23, 2010 Trial Transcript at 74) In that same letter, Merritt

13

wrote, "All I ask is for one chance before life completely gets away from me to prove that I am bigger than this dreadful sin that has cursed me since I was a child and a real opportunity to finally face my demons so I will never have to put myself or anyone else in harm's way ever again." (D.I. 17, Feb 24, 2010 Trial Transcript at 76)

After viewing the aforementioned evidence in the light most favorable to the prosecution, the court concludes that a rational juror could have found Merritt guilty of first degree rape beyond a reasonable doubt. Given this determination, Merritt cannot demonstrate a reasonable probability that the outcome of his trial would have been different but for defense counsel's failure to contemporaneously object to the sufficiency of the evidence. Accordingly, the court concludes that the Delaware Supreme Court reasonably applied *Strickland* in denying claim two.

### C. Claim Three: Failure to Appoint Post-Conviction Counsel

In his final claim, Merritt contends *Martinez v. Ryan,* 566 U.S. 1 (2012) established a constitutional right to the assistance of counsel in collateral proceedings, and that he is therefore entitled to habeas relief because he Superior Court denied his motion for the appointment of counsel in his Rule 61 proceeding. This claim is unavailing, because there is no constitutional right to counsel in collateral proceedings. *See Pennsylvania v. Finley,* 481 U.S. 551, 555 (1987); *Coleman*, 501 U.S. at 752. Although, as previously explained, *Martinez* announced a "narrow exception" to the rule that an attorney's performance in a state collateral proceeding cannot qualify to excuse a procedural default, *Martinez* did not recognize or create an automatic constitutional right to counsel in collateral proceedings. Thus, the court will deny claim three for failing to present a proper basis for federal habeas relief.

## IV. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). If a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Id.*

The court has concluded that Merritt's petition fails to warrant federal habeas relief, and is persuaded that reasonable jurists would not find this conclusion to be debatable. Therefore, the court will not issue a certificate of appealability.

## V. CONCLUSION

For the reasons stated, Merritt's petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied without an evidentiary hearing or the issuance of a certificate of appealability. An appropriate order shall issue.

15